UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------X

TOMJAI ENTERPRISES, CORP., a Florida
Corporation,

                    Plaintiff,

     - against -                              12 Civ. 3729 (RWS)

                                                   OPINION

LABORATORIE PHARMAPLUS USA, INC. d/b/a
"Laboratorie Pharmaplus," INTERNATIONAL
BEAUTY TRADE USA, INC., I.B.E. COSMETICS,
INC. a/k/a "International Beauty Exchange,"
VICTORIA ALBI INTERNATIONAL, INC., VICTORIA
ALBI, INC., HARRY AINI, JACOB AINI a/k/a
"Jack" AINI, MICHAEL AINI, EZRA AINI, CHOUL
REALTY, INC., BEAUTY & COSMETIC NETWORK,
CORP., BEAUTY & NEW KING, INC., YOUNG BAE
KANG a/k/a "JOHN KING," and KWANSOO KIM
a/k/a "JASON" KIM,

                    Defendants.

----------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiff

          BROWN & WHALEN, P.C.
          260 Madison Avenue, 17th Floor
          New York, NY 10017
          By:  Rodney Alan Brown, Esq.

          Attorneys for Defendants

          GRAY ROBINSON
          1221 Brickell Avenue, Suite 1600
          Miami, FL 33131
          By:  Jonathan L. Gaines, Esq.
               Karen Linda Stetson, Esq.

**Sweet, D.J.**

There are two motions pending in the above-captioned action.  Defendants Laboratorie Pharmaplus USA, Inc., International Beauty Trade USA, Inc., I.B.E. Cosmetics, Inc., Victoria Albi International, Inc., Victoria Albi, Inc., Harry Aini, Jacob Aini, Michael Aini, Ezra Aini, Choul Realty, Inc., Beauty & Cosmetic Network, Corp., Beauty & New King, Inc., Young Bae Kang and Kwansoo Kim (collectively, the "Defendants") have moved to transfer this matter to the United States District Court for the Southern District of Florida, or, alternatively, Defendants have moved, pursuant to 28 U.S.C. § 1404 and Fed. R. Civ. P. 21, to transfer the claims against the trademark owner and its principle, i.e. Defendants International Beauty Trade USA, Inc. and Harry Aini, following their severance from the claims against the other Defendants.  Additionally, Defendant Choul Realty Inc. ("Choul Realty") has moved to dismiss with prejudice Count IX of the complaint (the "Complaint") filed by Plaintiff Tomjai Enterprises, Corp. ("Tomjai") and has requested that Choul Realty be awarded its costs.  On the facts and conclusions set forth below, both Defendants' motion to transfer and Choul Realty's motion to dismiss are denied.

**Prior Proceedings**

1

On March 8, 2012, Plaintiff filed a complaint in the Southern District of Florida (the "Florida Complaint") against several of the Defendants named in this action, including Laboratorie Pharmaplus USA, Inc., International Beauty Trade USA, Inc., I.B.E. Cosmetics, Inc., Victoria Albi International, Inc., Victoria Albi, Inc. Harry Aini, Jacob Aini, Michael Aini, Ezra Aini and Beauty & Cosmetic Network Corp.   In addition, the Florida Complaint named Hassanin Baber, Robert Jean Cesar, B&C Cosmetics, Inc., B&C Distribution Center, Inc., K&N Distributors, Inc., Beauty Exchange, Inc., Beauty Exchange #5, Inc., Beauty Exchange #6, Inc. and Jasmen Beauty Supply, Inc. Although they are Defendants in the above-captioned action, the Florida Complaint did not identify as defendants Choul Realty, Beauty & New King, Inc., Young Bae Kang or Kwansoo Kim.

The Florida Complaint, which seeks damages and injunctive relief arising from the defendants' alleged trademark and trade dress infringement as well as unfair competition, lists six causes of action, including federal trademark infringement under 15 U.S.C. § 1114, federal unfair competition/false designation of origin under 15 U.S.C. § 1125(a), trade dress infringement under 15 U.S.C. § 1125(a),

2

Florida state trademark infringement under Fla. Stat. § 495.131,
Florida common law trademark infringement and Florida common law
unfair competition.

On May 10, 2012, Plaintiff filed the Complaint in
against Defendants in the Southern District of New York.  The
Complaint, which in many passages is verbatim of the Florida
Complaint, seeks damages and injunctive relief arising from
Defendants' trademark and trade dress infringement as well as
unfair competition.  The Complaint lists nine causes of action
including federal trademark infringement under 15 U.S.C. § 1114,
federal unfair competition/false designation of origin under 15
U.S.C. § 1125(a), trade dress infringement under 15 U.S.C. §
1125(a), violation of New York General Business Law § 360-1
(anti-dilution), New York common law trademark infringement, New
York common law unfair competition, unjust enrichment, violation
of New York General Business Law § 349 and violation of New York
Real Property Law § 231(2).

On June 18, Defendants filed their motion to transfer
and Choul Realty filed its motion to dismiss with prejudice
Count IX, which alleges violation of New York Real Property Law
§ 231(2).  The motions were scheduled to be heard on submission

3

on July 9, 2012.  Upon request of Plaintiff, the submission date
was adjourned, and both motions were marked fully submitted on
July 23.

**The Complaint**

        The Complaint alleges the following facts, which are
accepted as true at this stage of the litigation.  Plaintiff is
a producer of beauty products in the United States who markets
its products under various brands including Xtreme Brite, Clear
Quick, African Beauty, Tetmosol, MJ Magic, So Brite, 3 Days 2
Nights, Hyprogel, Carrot Plus, Perfecting Britener, Immediat
Claire, Brite Marks and Claire & Brite.  Plaintiff produces,
markets and sells Xtreme Brite brand skin lightening beauty
products throughout the State of Florida, the United States and
the world, and Plaintiff has used in commerce the service mark
Xtreme Brite since at least as early as August 1, 2008.

        On or about June 3, 2009, Plaintiff applied for
registration of the mark "Xtreme Brite" with the United States
Patent and Trademark Office ("USPTO").  On December 22, 2009,
Registration Number 3,728,336 was assigned to the mark.
Additionally, Plaintiff owns International Trademark

4

Registration No. 1,053,895 for the mark "Xtreme Brite," which
issued on September 14, 2010 by the World Intellectual Property
Organization, and Plaintiff also owns a European Community
Trademark.  Additionally, the Complaint alleges that on or about
March 2, 2012, Plaintiff once again applied for registration of
the mark "Xtreme Brite" with the USPTO.

Plaintiff has acquired common law trademark rights in
the mark "Xtreme Brite" used in New York, interstate and
international commerce in connection with beauty products.
Since at least as early as August 2006, Plaintiff has used the
mark Xtreme Brite, which it has prominently displayed in
advertising and in marketing materials for its products,
including use of the mark and design on the products, on the
internet and in print advertisements.  As a result of
Plaintiff's use of the Xtreme Brite mark, the mark has achieved
favorable third-party publicity and recognition.  The mark is
distinctive and has become an indication of the origin and level
of quality of Plaintiff's products.  By using the mark for
almost six years in the cosmetic industry in New York, Plaintiff
has developed goodwill within the industry and the public.
Plaintiff has also used distinctive trade dress, which is
comprised of the packaging, bottle and box shape, color,

5

positioning of logos, sizes, text, labels, graphics and exterior design.  Defendants are familiar with the products Plaintiff offers under the Xtreme Brite label.  Plaintiff and Defendants are direct competitors in the cosmetics industry, particularly in the beauty products market focused on ethnic consumers purchasing skin lightening beauty products.

In or about 2009, Defendants Harry Aini and Jacob Aini travelled to Florida to speak with Sandy Imana, a representative of Plaintiff, concerning Defendants becoming Plaintiff's distributor of Xtreme Brite products in the New York metropolitan area.  Plaintiff refused Defendants' request to distribute Xtreme Brite.  Upon information and belief, shortly thereafter, Defendants began the manufacturing, marketing, distributing, selling, advertising, promoting, and/or offering for sale of products which appear to consumers as identical to Plaintiff's products or emanating from the same source, using similar trade tress, under the "Extreme Glow" mark.  Defendants engaged in this activity within New York and in interstate commerce.  Defendants have adopted and are using the mark "Extreme Glow" and variations thereof which are confusingly similar to Plaintiff's mark in connection with the marketing of infringing products including beauty creams, beauty gels, beauty

6

lotions, beauty serums and soaps for body care.

On June 30, 2011, Defendant Victoria Albi
International, Inc. filed an intent-to-use trademark application
with the USPTO for the mark "Extreme Glow."  The Complaint
alleges that, on June 30, 2011, Jacob Aini, on behalf of
Victoria Albi International, Inc., knowingly signed and
submitted false declarations before the USPTO, attesting that he
believed to the best of his knowledge that no other person,
firm, corporation or association had the right to use the
"Extreme Glow" mark in commerce, either in its identical form or
"in such near resemblance thereto as to be likely, when used on
or in connection with the goods/services of such other person,
to cause confusion, or to cause mistake, or to deceive[.]"

Plaintiff sent cease and desist letters to each of the
Defendants between February 13, 2012 and March 2, 2012.
Notwithstanding these letters, upon information and belief,
Defendants continue to use Plaintiff's marks and trade dress.
According to the Complaint, Defendants willfully adopted and
commenced use of trademarks and trade dress confusingly similar
to those of Plaintiff long after Plaintiff first used
Plaintiff's mark and trade dress in commerce and after Plaintiff

7

had obtained federal and international trademark registrations.

The Complaint, which alleges the nine causes of action enumerated above, seeks a preliminary injunction retraining Defendants from using Plaintiff's mark or any variation thereof or any mark confusingly similar to Plaintiff's, corrective advertising for a period of twelve months in the media in which the infringing marks had been published explaining to customers that "Extreme Glow" is not affiliated with Plaintiff, an order directing the Commissioner of Trademarks to reject Victoria Albi International, Inc.'s application to the USPTO and otherwise cancel any registration, an accounting by Defendants of their profits attributable to their wrongful conduct and a judgment in such amount along with interest, any and all damages suffered by Plaintiff, Lanham Act relief including treble damages and attorney's fees, punitive damages, attorney's fees via any other applicable authority and costs.

**The Applicable Standard**

**A. Standard Applicable To A Motion To Transfer**

The first-filed rule gives priority to the earlier of

two competing lawsuits and "'applies when identical or
substantially similar parties and claims are present in both
courts.'" Pippins v. KPMG LLP, No. 11 Civ. 0377(CM), 2011 WL
1143010, at *2 (S.D.N.Y. Mar. 21, 2011) (quoting In re Cuyahoga
Equip. Corp., 980 F.2d 110, 116-17 (2d Cir. 1992)).  The first-
filed rule does not require identical parties in both cases, but
merely requires "substantial overlap."  See Spotless Enters.
Inc. v. Accessory Corp., 415 F. Supp. 2d 203, 206 (E.D.N.Y.
2006).  "The Second Circuit recognizes two circumstances that
warrant departure from the first-filed rule: (1) where there are
'special circumstances,' and; (2) where the 'balance of
convenience' tilts in favor of the second forum."  Pippins, 2011
WL 1143010, at *2 (citing Emp'rs Ins. of Wausau v. Fox Entm't
Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008)).  "Special
circumstances" include "manipulative or deceptive behavior"
(such as where the first lawsuit is an improper anticipatory
declaratory judgment action) or where "forum shopping alone
motivated the choice of the situs for the first suit."  Emp'rs
Ins. of Wausau, 522 F.3d at 275-76 (internal quotation marks
omitted).  The "balance of convenience" factors are "essentially
the same as those considered in connection with motions for
transfer of venue pursuant to 28 U.S.C. § 1404(a)."  Id. at 275
(internal quotation marks omitted).  Such factors include: "(1)

9

the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." Id. (citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)).

## B. Standard Applicable To A Motion To Dismiss

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.

10

1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl Corp. v. Twombly</u>,
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
Plaintiffs must allege sufficient facts to "nudge[ ] their
claims across the line from conceivable to plausible." <u>Twombly</u>,
550 U.S. at 570.  Though the court must accept the factual
allegations of a complaint as true, it is "not bound to accept
as true a legal conclusion couched as a factual allegation."
<u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

In the event that a motion to dismiss is granted,
"[i]t is the usual practice upon granting a motion to dismiss to
allow leave to replead." <u>Schindler v. French</u>, 232 Fed. Appx.
17, 19 (2d Cir. 2007) (citing <u>Cortec Indus., Inc. v. Sum Holding
L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991)).

## Defendants' Motion To Transfer Is Denied

Defendants contend that this action should be
transferred to the Southern District of Florida for
consolidation with Plaintiff's first-filed action.  According to
Defendants, in the interests of justice and judicial economy,
and pursuant to 28 U.S.C. § 1404, this Court should transfer
this matter, as transferring the case will prevent the waste of

11

judicial resources.  Defendants cite several cases noting the
first-filed rule to be well-settled law in this Circuit, and
Defendants contend that there are no "countervailing factors" or
"special circumstances" that would warrant denial of the
transfer.

      Because Plaintiff initially filed a complaint based on
the same allegations in the Southern District of Florida, the
first-filed rule controls in this case.  See Pippins, 2011 WL
1143010, at *2 ("The first-filed rule states that where there
are two competing lawsuits, the first should have priority . . .
The first-filed rule applies when identical or substantially
similar parties and claims are present in both courts.")
(internal quotation marks and citations omitted).  As noted
above, the first-filed rule gives priority to the earlier-filed
case unless there are "special circumstances" or where the
"balance of convenience" tilts in favor of the second forum.
Id.  The Second Circuit has defined "special circumstances" to
include "manipulative or deceptive behavior," or a situation
where "forum shopping alone motivated the choice of the situs
for the first suit," Emp'rs Ins. of Wausau, 522 F.3d at 275-76,
and there is nothing in the parties' briefing to suggest any
"special circumstances" in this case.  With respect to whether

12

the "balance of convenience" tilts in favor of the second forum,
the Court must apply the factors considered in connection with
motions to transfer venue filed pursuant to 28 U.S.C. § 1404(a).
See id. at 275 ("We agree with several district courts within
our Circuit that the factors relevant to the balance of
convenience analysis are essentially the same as those
considered in connection with motions to transfer venue pursuant
to 28 U.S.C. § 1404(a).").

The first factor warranting consideration is
Plaintiff's choice of forum.  See Emp'rs Ins. of Wausau, 522
F.3d at 275.  District courts deciding transfer motions have
noted that "[a] plaintiff's choice of forum is generally
entitled to considerable weight and should not be disturbed
unless the balance of the factors is strongly in favor of the
defendant.  Where the factors are equally balanced, the
plaintiff is entitled to its choice."  Berman v. Informix Corp.,
30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citations omitted).
However, "plaintiffs' choice of forum is accorded less weight
where the plaintiffs' chosen forum is neither their home nor the
place where the operative facts of the action occurred."  Dwyer
v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994).
Here, Plaintiff, by opposing Defendants' motion to transfer the

13

case to the Southern District of Florida, has chosen the
Southern District of New York as its venue.  By virtue of being
a Florida corporation, Plaintiff's chosen forum is not its home,
and, as will be explored in more detail below, much of the
litigation's operative facts occurred in the Southern District
of New York.  Accordingly, there is no reason to discount
Plaintiff's chosen forum.

        The second factor to be considered in the "balance of
convenience" analysis is the convenience of witnesses.  See
Emp'rs of Wausau, 522 F.3d at 275.  "When a party seeks the
transfer on account of the convenience of witnesses under §
1404(a), [it] must clearly specify the key witnesses to be
called, and must make a general statement of what their
testimony will cover."  Am. S.S. Owners Mut. Prot. & Indem.
Assoc., Inc. v. LaFarge N. Am., Inc., 474 F. Supp. 2d 474, 482
(S.D.N.Y. 2007).  In an infringement action, the most critical
witnesses may be "those officers and employees who were involved
in the design, production and sale of the [allegedly infringing]
products."  ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542,
548 (S.D.N.Y. 2008) (quoting AEC One Stop Grp., Inc. v. CD
Listening Bar, Inc., 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004)).
Here, Defendants are all either individuals that are New York

14

residents or New York entities with their places of business in
New York.  Accordingly, those witnesses who were involved in the
design, production and sale of the allegedly infringing products
reside or have a principal place of business in New York, thus
suggesting the Southern District of New York to be the most
appropriate forum for the litigation.

  The third factor to be considered involves the
location of relevant documents and relative ease of access to
sources of proof.  See Emp'rs Ins. of Wausau, 522 F.3d at 275.
It is often held that in infringement cases, because the bulk of
the relevant evidence usually comes from the accused infringer,
the location of where the defendants' documents are kept weighs
in favor of litigating in that forum.  See Fuji Photo Film Co.,
Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 374 (S.D.N.Y.
2006) ("In patent infringement cases, the bulk of the relevant
evidence usually comes from the accused infringer.
Consequently, the place where the defendant's documents are kept
weighs in favor of transfer to that location."); see also
Quiksilver, 581 F. Supp. 2d at 548-49; Millennium, L.P. v.
Hyland Software, Inc., No. 03 Civ. 3900(DC), 2003 WL 22928644,
at *4 (S.D.N.Y. Dec. 10, 2003).  Accordingly, the Southern
District of New York appears to be the more appropriate forum

with respect to the location of documents and other sources of proof.

The fourth factor considers the convenience of the parties.  See Emp'rs Ins. of Wausau, 522 F.3d at 275.  Here, all of the Defendants are located in New York, causing this factor to weigh in favor of the Southern District of New York as the more appropriate forum.

The fifth factor focuses on the locus of operative facts.  See Emp'rs Ins. of Wausau, 522 F.3d at 275.  "The locus of operative facts is a primary factor in determining whether to transfer venue."  LaFarge N. Am., 474 F. Supp. 2d at 485.  Along with the location of material witnesses, this factor has a bearing on where the "center of gravity" of the action rests. Id.  In trademark infringement cases, "courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum."  Quiksilver, 581 F. Supp. 2d at 549 (citing Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645(RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003)). The Complaint alleges that "[t]his case involves Defendants' continued willful infringement of Plaintiff's trademarks used in

16

connection with beauty products, by Defendants' use of their EXTREME GLOW mark in interstate commerce and in Florida in connection with identical beauty products." Compl. ¶ 22. Accordingly, because the Complaint alleges infringing conduct in Florida, this factor weighs in favor of granting Defendants' motion to transfer.

The sixth factor concerns the availability of process to compel the attendance of unwilling witnesses. See Emp'rs Ins. of Wausau, 522 F.3d at 275. According to Plaintiff, a majority of the non-party witnesses are located in New York. Defendants dispute Plaintiff's assertion. Because the objective facts concerning this factor are scant, it is difficult to ascertain where this factor weighs in the analysis.

The final factor addresses the relative means of the parties. See Emp'rs Ins. of Wausau, 522 F.3d at 275. There are no facts presently before the Court suggesting any significant disparity in means that would impact the ability of the parties to litigate this action in the Southern District of New York.

After conducting the "balance of convenience" analysis as prescribed by the Second Circuit, it appears that the balance

17

of convenience exception is applicable to the present action.
Although Defendants rest their argument on the fact that the
first-filed rule is well-settled in this Circuit, Defendants'
briefing fails to recognize that the rule is a "'presumption'
that may be rebutted by proof of the desirability of proceeding
in the forum of the second-filed action." Emp'rs Ins. of
Wausau, 522 F.3d at 274 (quoting Berisford Capital Corp. v.
Cent. States, Se. & Sw. Areas Pension Fund, 677 F. Supp. 220,
222 (S.D.N.Y. 1988)). Indeed, "the first-filed rule does not
supersede the inquiry into the balance of convenience under 28
U.S.C. § 1404(a)." LaFarge N. Am., 474 F. Supp. 2d at 481.
"The inquiry still requires selection of the more appropriate
forum[.]" Emp'rs Ins. of Wausau, 522 F.3d at 274. Here, the
analysis prescribed by this Circuit suggests the Southern
District of New York to be the most appropriate forum for the
litigation. Accordingly, Defendants' motion to transfer is
denied.


        Defendants contend that, since all parties consent to
the transfer of this action, Defendants' motion to transfer the
case to the Southern District of Florida should be granted.
Defendants note that 28 U.S.C. § 1404 states that "[f]or the
convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, the fact that Plaintiff has objected to Defendants' motion suggests Plaintiff has not consented to this action being pursued in the Southern District of Florida. Furthermore, as noted above, the factors involved in the evaluation of a § 1404 motion weigh in favor of this action remaining in the Southern District of New York.

Defendants contend that, even if the Court does not deem it appropriate to transfer the case in its entirety to the Southern District of Florida, the claims against the trademark owner and its principal, i.e. Defendants International Beauty Trade USA, Inc. and Harry Aini, should be severed from the claims against the other Defendants and transferred for consolidation with the Plaintiff's initial action in Florida. Defendants, citing Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir. 1968), contend that the "severance and transfer" practice developed by the Second Circuit warrants the separation of Plaintiff's claims against these two Defendants. The "severance and transfer" doctrine Defendants rely upon was developed to address a situation where transfer under 28 U.S.C.

19

§ 1404(a) was warranted but could not be effectuated on account
of a single claim that could not have been brought in the
transferee jurisdiction.  To avoid this result, the Second
Circuit endorsed the application of Fed. R. Civ. P. 21 to sever
the offending claim in order to facilitate the transfer.  See
Wyndham Assoc., 398 F.2d at 618 ("We believe that where the
administration of justice would be materially advanced by
severance and transfer, a district court may properly sever the
claims against one or more defendants for the purpose of
permitting the transfer of the action against the other
defendants, at least in cases where, as here, the defendants as
to whom venue would not be proper in the transferee district are
alleged to be only indirectly connected to the manipulations
which form the main subject matter of the action.").

        Notwithstanding Defendants' contentions, the
"severance and transfer" doctrine is not applicable to this
case, as the rationale for denying Defendants' motion to
transfer is unrelated to the presence of a particular claim that
could not be brought in the Southern District of Florida.
Denial of Defendants' motion to transfer is based on the
application of the factors pertaining to 28 U.S.C. § 1404.
These factors demonstrate the appropriate forum for this

litigation to be the Southern District of New York.

Furthermore, in a multi-defendant case, to sever and transfer a claim against one or more defendants, a court must consider "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 104 F. Supp. 2d 279, 288 (S.D.N.Y. 2000) (internal quotation marks and citations omitted). If jurisdiction over all defendants exists in one forum, severance would not be appropriate. See White Mop Wringer Co. of Canada Ltd. v. BT Capital Partners, Inc., No. 95-CV-565(RSP/DS), 1997 WL 222380, at *2 (N.D.N.Y. Apr. 29, 1997) ("Moreover, because jurisdiction exists over all defendants in the Southern District, severance is not appropriate at this time."). Defendants have raised no contentions concerning the differentiability of issues to be tried, the different witnesses or evidence involved or whether Defendants will be prejudiced should severance be denied. Plaintiff, on the other hand, has

21

noted that severance of these two Defendants will prejudice
Plaintiff, forcing Plaintiff to litigate in two separate
locations.  Accordingly, Defendants' request that Defendants
International Beauty Trade USA, Inc. and Harry Aini be severed
and transferred to the Southern District of Florida is denied.


**Defendant Choul Realty's Motion To Dismiss Is Denied**


Count IX of the Complaint alleges violations of New
York Real Property Law § 231(2), which states:

> **§ 231 Lease, when void; liability of landlord where**
> **premises are occupied for unlawful purpose**
>
> 2. The owner of real property, knowingly leasing or giving
> possession of the same to be used or occupied, wholly or
> party, for any unlawful trade, manufacture or business, or
> knowingly permitting the same to be so used, is liable
> severally, and also jointly with one or more of the tenants
> or occupants thereof, for any damage resulting from such
> unlawful use, occupancy, trade, manufacture or business.

N.Y. R.P.L. § 231(2).  The Complaint alleges that Choul Realty
"knowingly leased or gave possession of the warehouse located at
5625 Flushing Avenue, Maspeth, New York to the Defendants,
wholly or partly for unlawful trade, manufacture or business, or
knowingly permitting the same to be used."  Compl. ¶ 105.
According to Choul Realty, New York Real Property Law § 231(2)

applies only to criminal activity, and a plaintiff is required
to show as part of its prima facie case that a defendant
landlord from whom damages are sought was given notice of
repeated criminal activity on the premises.  See, e.g., Maria S.
v. Willow Enters. Inc., 234 A.D.2d 177, 178-79, 651 N.Y.S.2d 486
(1st Dep't 1996) ("In order to allege a prima facie violation of
the statute [Real Property Law § 231(2)], the plaintiff must
show that defendant was given notice of repeated criminal
activity on the premises such that the risk of injury was
likely, and demonstrate that a causal relationship existed
between the complained of activities and plaintiff's
injuries."); Neil v. N.Y. City Hous. Auth., 48 A.D.3d 767, 768,
853 N.Y.S.2d 567 (2d Dep't 2008).  According to Choul Realty,
because the Complaint fails to allege a criminal offense,
application of this statute is unwarranted, and Count IX should
be dismissed.


        The issue of whether a landlord can be held liable
under New York Real Property Law § 231(2) for trademark
infringement carried out by his tenants was addressed in the
case of Polo Ralph Lauren Corp. v. Chinatown Gift Shop, 855 F.
Supp. 648, 650 (S.D.N.Y. 1994).  At the motion to dismiss stage
of that case, the Court addressed the issue of whether it should

23

exercise supplemental jurisdiction over this state claim

presented where federal jurisdiction was premised on the basis

of a cause of action alleging trademark infringement. The

defendant landlord in Polo Ralph Lauren contended that

"supplemental jurisdiction over the § 231(2) claim is improper

because this case presents an issue of first impression under

state law—whether or not a landlord will be liable for trademark

infringement carried out by his tenants." Polo Ralph Lauren,

855 F. Supp. at 650. While the defendant landlord contended

that the New York courts' interpretation of § 231(2) suggested

that the statute's reach was limited to penal law violations,

the plaintiffs argued that the statute "merely codified the

preexisting duty of a landlord to prevent a known illegality on

his premises." Id. The Court in Polo Ralph Lauren ultimately

exercised supplemental jurisdiction over the § 231(2) claim:

> Plaintiffs also point out that § 231(2) has been applied to
> violations outside the criminal sphere, contrary to the
> suggestion in [Friends of Yelverton, Inc. v. 163rd St.
> Improvement Council, Inc., 135 Misc.2d 275, 514 N.Y.S.2d
> 841, 844 (N.Y. City Civ. Ct. 1986)]. For example, in State
> v. Rock, 147 Misc.2d 231, 555 N.Y.S.2d 584 (Sup. Ct.
> Saratoga Cnty. 1990), the court held a landowner liable for
> an illegal solid waste management facility operated by the
> lessee with his knowledge.

Polo Ralph Lauren, 855 F. Supp. at 650-51. As such, the Polo

24

Ralph Lauren court addressed and rejected the very grounds upon which Choul Realty seeks to dismiss Plaintiff's § 231(2) claim, namely that Plaintiff has failed to allege criminal conduct. While Choul Realty cites several cases applying § 231(2) in the context of its applicability to violations of the penal code, none of these cases expressly limit this statute's application to only criminal law violations.  Choul Realty's argument concerning the Complaint's failure to allege criminal activity is the only basis upon which Choul Realty has moved to dismiss Count IX.  Because the Polo Ralph Lauren case reveals Choul Realty's contention regarding New York Real Property Law § 231(2) to be without merit, the motion to dismiss is denied.

**Conclusion**

For the reasons set forth above, both Defendants' motion to transfer and Choul Realty's motion to dismiss are denied.

It is so ordered.

New York, NY
July 2 9 , 2012

ROBERT W. SWEET
U.S.D.J.

25